Cloide C. BRANNING, Plaintiff,

v.

MORGAN GUARANTY TRUST COMPA-
NY OF NEW YORK, a Corporation,
Walter W. Driver, Jr., and Joseph R.
Bankoff, Defendants.

Civ. A. No. 2:85–1783–8.

United States District Court,
D. South Carolina,
Charleston Division.

June 8, 1990.

Francis T. Draine, Columbia, S.C., for plaintiff.

Henry B. Smythe, Jr., Charleston, S.C., Thomas H. Pope, Newberry, S.C., for defendants.

**1058**

## ORDER

BLATT, District Judge.

This civil case is before the court on the defendants' motions to dismiss the third amended complaint for failure to state a claim upon which relief can be granted. These motions were referenced to a United States Magistrate, who heard this matter in accordance with 28 U.S.C. § 636. In the course of those proceedings the parties submitted materials outside the scope of the pleadings; therefore, the magistrate converted the motions to dismiss into motions for summary judgment. On February 1, 1989, the magistrate entered a report and recommendation in which he recommended that summary judgment be granted for the defendants. The parties were notified of their right to file objections to the magistrate's report and of the consequences for failure to do so in a timely manner; in response, the plaintiff filed timely objections.

■ The report and recommendation of the United States Magistrate was made in accordance with 28 U.S.C. § 636 and the local rules of this district concerning reference to a magistrate. *See United States Magistrates*, Local Rule 19, D.S.C.; *Social Security Cases*, Local Rule 20, D.S.C.; *Bowman v. Bordenkircher*, 522 F.2d 209 (4th Cir.1975). Under 28 U.S.C. § 636(b),

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

Absent timely objection from a dissatisfied party, a district court is not required to review, under a *de novo* or any other standard, a magistrate's factual or legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). In the present case, the plaintiff has filed objections to the magistrate's report; therefore, this court will conduct a *de novo* review of those portions of the magistrate's report to which objections were made.

The plaintiff, Cloide C. Branning (Branning), was a partner in a real estate joint venture named Pleasant Point Plantation. The other members of the partnership were Jack Pendley and David Pendley. The partnership was formed on November 28, 1973, to develop a residential golf community on Lady's Island, Beaufort County, South Carolina. The partnership, to secure the necessary financing, entered into a buy-sell agreement with Morgan Guaranty Trust Company of New York (Morgan) and Atlanta National Real Estate Trust (Anret). Under this agreement, dated June 11, 1974, Morgan loaned the partnership $1.5 million. The agreement further provided that Anret would purchase this loan from Morgan on or before July 1, 1976. This loan was guaranteed by Branning. Subsequent to the first agreement, Branning alleges that Morgan, Anret, and the Pendley brothers secretly agreed that Anret would only be liable to Morgan for $1.3 million on the Pleasant Point venture—(the side agreement). Branning believes this happened between April 8, 1974, and October 3, 1974. This second agreement was allegedly made in conjunction with a restructuring and consolidation of debts owed by third parties to Anret. Walter W. Driver, Jr. (Driver) and Joseph H. Bankoff (Bankoff) were Morgan's attorneys in this transaction. On October 3, 1974, the original buy-sell agreement was amended to reflect Morgan's commitment to provide an additional $1 million in financing, for a total of $2.5 million, and the due date for Anret's purchase was extended to July 31, 1976. On June 21, 1976, the Pendley brothers transferred their interest in Pleasant Point Partnership to Branning.

On July 31, 1976, notwithstanding the terms of the alleged side agreement, Morgan demanded that Anret comply with the terms of the amended buy-sell agreement. Anret was unable to purchase the notes pursuant to the amended buy-sell agreement; Morgan then demanded payment of the $2.5 million loan from Pleasant Point.

Pleasant Point was unable to fulfill its obligation, and Morgan then commenced two law suits. On August 1, 1976, Morgan sued Anret in state court in Georgia on the amended buy-sell agreement—(the Georgia suit). In July, 1980, that suit was settled for $1.3 million, and the record was then sealed in that case. On September 24, 1976, Morgan foreclosed on the real estate in state court in South Carolina—(the foreclosure suit)—and on September 8, 1979, Morgan received a $4.2 million judgment in that action. The property was then purchased at foreclosure sale on November 5, 1979, by Morprop, a Morgan subsidiary, for $1.45 million. In the meantime, Morgan pursued a deficiency against Branning, and received a $2.8 million judgment in September, 1980; in July, 1981, Morprop sold the property for $2.2 million.

Branning, on October 1, 1976, sued the United States in the Court of Claims—(the avigation suit). This suit alleged that the United States had unlawfully taken an aviation easement over Pleasant Point through military overflights. Branning's creditors, including Morgan, were joined as third-parties in this suit. Branning, in May, 1985, was awarded $2 million, plus interest from the date of the taking, for a total judgment of $4,514,796.08. There were two later settlements involved in that case. Morgan and Branning negotiated a $500,000.00 credit for Branning on his indebtedness to Morgan in exchange for a full release for Morgan from Branning for any and all claims relating to the Georgia suit—(the Anret stipulation). The proceeds of the avigation suit were then distributed to Branning's creditors, with the consent of all parties to the avigation suit, and the approval of the Claims Court—(the distribution stipulation). Morgan received $4,436,703.28.

Subsequently, in June, 1985, Branning instituted this suit. The original complaint sought a further credit from Morgan than that obtained in the Anret stipulation, and

asked this court to order the unsealing of the record in the Georgia suit between Morgan and Anret. After limited discovery, Branning filed an amended complaint on April 17, 1986, naming Driver and Bankoff as additional defendants and alleging fraud, constructive fraud, breach of contract accompanied by fraudulent acts, tortious interference with contract, and a RICO claim against the defendants. This complaint also sought to repudiate the compromise embodied in the Anret stipulation, on the ground that Branning's attorneys lacked the authority to enter into the Anret stipulation. This court ordered Morgan to allow Branning access to the Georgia records in July, 1986.[1] In August, 1986, the parties returned to the Claims Court. The Claims Court held several hearings in which Branning argued that his Washington attorneys mislead him with regard to, and/or did not have the authority to enter into, the stipulations, and that Morgan's counsel mislead Branning and his counsel. The Honorable Mastin White, United States Claims Court Judge, upheld the authority of Branning's attorneys to enter into the distribution stipulation and ordered the proceeds of the avigation suit distributed accordingly.

This court, in February, 1988, conducted a hearing on the defendants' motions to dismiss the amended complaint. As a result of this proceeding, the RICO claim was dismissed, and a second amended complaint was filed. On June 27, 1988, a third amended complaint was filed to correct technical deficiencies in the plaintiff's fraud allegations. It is this complaint that is presently before the court.

There is one other proceeding of note. Branning, on February 3, 1988, filed a motion with the South Carolina Supreme Court for a new trial in the Beaufort County foreclosure action. The grounds for this motion were identical to the theories advanced in the present case. On May 17,

---

1. There is a factual dispute concerning when Branning first became aware of the alleged side agreement, if such agreement ever existed. The defendants believe that Branning had knowledge of the alleged debt restructuring between Anret and Morgan as early as 1978; Branning states that it was not until February, 1987—(after this court asked counsel for Branning to open the Georgia records)—that he became aware of the full scope of the debt restructuring.

1988, the motion was summarily denied under Supreme Court Rule 23.

In the third amended complaint, Branning is suing the defendants for their actions with regard to the Anret stipulation and the alleged side agreement. The remaining claims are for breach of contract with fraudulent acts, tortious interference with contract, constructive fraud, and fraud. The plaintiff alleges, in brief, that the defendants deprived Branning of credit on the Morprop sale and the Anret settlement by suppressing information concerning the Anret side agreement and settlement, that the side agreement with Anret was a material breach of the buy-sell agreement, and that the defendants, including Driver and Bankoff as alleged agents of Morgan, breached the buy-sell agreement by these deceitful acts; that defendants Driver and Bankoff, as agents and attorneys for Morgan, tortiously interfered with the buy-sell agreement by advising and encouraging Morgan and Anret to enter into the side agreement, and for failing to give Branning credit for the Anret settlement; that the defendants violated the public confidences arising from their equitable relationship with the plaintiff; and that the defendants, during the Claims Court proceedings, made misleading representations to the plaintiff concerning the side agreement, which induced the plaintiff to sign the Anret stipulation.

The defendants filed motions to dismiss based on a variety of grounds. These motions were referenced to Magistrate Carr, who converted the defendants' motions to dismiss into motions for summary judgment, because each party had submitted exhaustive materials outside the pleadings. The magistrate recommended that the defendants' motions be granted and that the complaint be dismissed. He stated that there was no breach of contract accompanied by any fraudulent act because there was no evidence of any breach of the buy-sell agreement; that there could be no tortious interference with contract because the breach, if any, was not procured by a third party; that there could be no constructive fraud because there was no fiduciary relationship, or in the alternative, that the issue was moot because only equitable relief was available; and that there can be no fraud claim because the validity of the Anret stipulation was necessarily litigated in the Claims Court and is now res judicata.

Branning responded to the magistrate's report by filing 37 objections. These objections did not satisfy the specificity requirement of Federal Rule of Civil Procedure 72(b), so this court directed Branning to file a brief in support of his objections. This court then held a hearing on October 16, 1989, to consider the plaintiff's objections. At that hearing, the plaintiff's second and third causes of action—(tortious interference with contract and constructive fraud) —were dismissed because the plaintiff failed to properly object to the magistrate's recommendations as to those claims. Additionally, the defendants' motions were partially granted with respect to the first and fourth causes of action—(breach of contract with fraudulent acts and fraud)— Morgan was not granted summary judgment on claims arising from the alleged side agreement for causes of action one and four, and defendants Driver and Bankoff were not granted summary judgment on the fourth cause of action pending a determination of whether privity exists, for purposes of res judicata, between defendants Driver and Bankoff and defendant Morgan.[2] These remaining issues were held in abeyance until the parties submitted briefs on the issue of privity. After the briefs were submitted, the court, on its own motion, asked the parties to brief the question of whether "the refusal of the South Carolina Supreme Court on May 17, 1988, to reopen *Morgan Guaranty Trust Company of New York v. Pendley, et al.,* ha[s] any preclusive effect in the present case." These briefs were submitted in timely fashion, and the remaining issues are now ripe for resolution.

---

**2.** The grounds for granting summary judgment are fully set forth in the transcript of the October 16, 1989, hearing.

The first issue is whether the magistrate erred in finding that the alleged side agreement did not constitute a breach of the amended buy-sell agreement, and that the asserted concealment of the alleged side agreement did not give rise to fraud.[3] The magistrate found that there was no evidence to support the assertion that the alleged side agreement breached the buy-sell agreement. The magistrate further found that even if the alleged side agreement breached the buy-sell agreement, the amendment of the buy-sell agreement cured any defects. The plaintiff claims that these determinations are error, as there are facts in the record in support of his position that the side agreement breached the buy-sell agreement and that the side agreement was fraudulently concealed.

■■■■ Under Federal Rule of Civil Procedure 56, a defendant is entitled to summary judgment upon a showing that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.... [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986) (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions. The evidence of the non-movant is to be accepted, and all reasonable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The defendant's burden may be met through the use of affidavits, exhibits, depositions, and other discovery materials. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

■■ The plaintiff has presented evidence which he contends indicates that there are material facts remaining in dispute. On the breach of contract issue, the plaintiff refers the court to the pleadings in the Georgia suit, the settlement document in the Georgia suit, the affidavit of Tommy D. Cochran, the affidavit of Waymon Ahart, and the deposition of Thomas Lamar Roan. The plaintiff also uses the Cochran, Ahart, and Roan evidence in support of his claim that the side agreement co-existed with the buy-sell agreement.

This court has examined the plaintiff's submissions in detail. While the affidavits and the deposition do contain contradictory references to the alleged $1.3 million side agreement, the plaintiff does not present adequate evidence to allow this case to go to trial. A fair reading of the record shows that the alleged side agreement never existed. The plaintiff can only point to a very few places in the voluminous materials submitted to the court to indicate the existence of the side agreement. While the affidavits and deposition do, in some respects, support the plaintiff's arguments, they fly in the face of the *overwhelming* mass of evidence in this case. The record at most indicates that there were discussions concerning a possible side agreement. These mere discussions are an inadequate basis on which to found an action for breach of contract accompanied by fraudulent acts. The scintilla of evidence presented by Branning is insufficient to allow a jury to return a verdict for the plaintiff on

---

**3.** The objections made by the plaintiff are quite extensive. To set them forth would consume an enormous amount of space in what, unfortunately, is a lengthy order. Suffice it to say that the plaintiff has properly objected to all of the magistrate's findings with respect to the first and fourth causes of action, and that this court, by way of the hearing on October 16, 1989, and the preparation of this order, has considered and decided *de novo* the issues relating to the side agreement and privity.

this issue. *See Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

■ Assuming, however, that there was a side agreement, examination of the relevant parts of the Roan deposition irrefutably demonstrates that any side agreement was merely one of several contingencies discussed in the event Morgan did not decide to fund the commitment. This transpired because the parties at that time were greatly concerned about Anret's precarious financial position. The terms of the side agreement never became effective because Morgan decided to make the additional $1 million loan. There is ample evidence in the record that Anret intended to fully fund the $1.5 million loan, and later the amended $2.5 million loan. Indeed, the pleadings in the Georgia suit, although alluded to by the plaintiff, support the defendants' position. Reference to the brief in opposition to partial summary judgment in the Georgia suit, filed by Anret on October 28, 1977, reveals that the side agreement was conditional. The plaintiff's accusations and insinuations cannot change the fact that the alleged side agreement, by its own terms, concerned a contingency that never arose.

■ Furthermore, even if the side agreement was a fully operative and legally effective document, the magistrate was correct in finding that it was superceded by the amended buy-sell agreement. It is undisputed that each of the parties signed the amended buy-sell agreement, and Morgan did demand the 2.5 million dollars from Anret on July 31, 1976. The plaintiff's own complaint states that the side agreement pre-dates the amended buy-sell agreement. While there is no merger clause in the amended buy-sell agreement, the amended buy-sell agreement directly contradicts the alleged side agreement. Generally, a prior and contemporaneous oral agreement pertaining to a subsequent written agreement is conclusively presumed to be merged into a written document. *Moore v. Moore*, 137 S.C. 366, 135 S.E. 363 (1926); *RentCo., A Division of Fruehauf Corporation v. Tamway Corporation*, 283 S.C. 265, 321 S.E.2d 199 (App.1984). Under *RentCo.*, there is an exception for consistent parol agreements that were not intended to be merged, but this exception clearly does not apply here. While the plaintiff argues that there was no merger because there is no merger clause in the amended buy-sell agreement, a merger clause in a written agreement is not necessary, and was, in fact, not contained in the contract at issue in *Moore*. The two agreements could not co-exist; therefore, the amended buy-sell agreement could never be breached by the side agreement, and any potential breach of the buy-sell agreement was cured.

■ The next issue is whether the magistrate erred in finding that the asserted concealment of the alleged side agreement did not constitute fraud. The plaintiff claims that he would never have entered into the Anret stipulation if the existence of the side agreement has been revealed by the defendants. The magistrate found that res judicata bars the plaintiff's claim because this issue was raised, or should have been raised, in the Claims Court.

■ The *Restatement (Second) of Judgments* § 19 (1982) provides that "[a] valid and final personal judgment rendered in favor of the defendant bars another action against the plaintiff on the same claim." *See Adkins v. Allstate Insurance Co.*, 729 F.2d 974, 976 (4th Cir.1984) (embracing Restatement rule). Res judicata precludes the litigation by the plaintiff in a subsequent action of claims "with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose." *Hartnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986); *Restatement (Second) of Judgments* § 24(1) (1982).[4]

---

4. The res judicata effects of a federal court decision on a federal question are controlled by federal law in subsequent federal court litigation. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4466 (1981). This proposition is set forth in *Blonder–Tongue* *Labs v. University of Illinois Foundation*, 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 1440 n. 12, 28 L.Ed.2d 788 (1971), and in the *Restatement (Second) of Judgments* § 87 (1982).

Fourth Circuit res judicata is applied because it is unclear whether the law in this circuit

This court, after a detailed examination of the Claims Court litigation, finds that federal res judicata operates to bar the present claim of fraud regarding the alleged side agreement. As noted earlier, in August, 1986, the plaintiff argued in the Claims Court that the distribution stipulation was invalid. The Claims Court had several hearings in which Branning argued that his Washington attorneys mislead him with regard to, and/or did not have the authority to enter into, the stipulations, and that Morgan's counsel mislead Branning and his counsel. Judge White upheld the authority of Branning's attorneys to enter into the distribution stipulation and ordered the proceeds of the avigation suit distributed. This suit is, in part, an attack on the Anret stipulation based on the alleged concealment of the side agreement. The cases are sufficiently similar for purposes of res judicata because they indisputably arise out of the same transaction. In both cases the transaction concerns the events and negotiations involved in preparing the Anret and distribution stipulations, which includes the alleged concealment of the side agreement. This issue should have been litigated in the Claims Court during the attack on the distribution stipulation, by way of a motion under Federal Rule of Civil Procedure 60(b), or on appeal if the Claims Court erred by not considering the issue; accordingly, the magistrate committed no error on this issue.

Furthermore, if this court found that the Anret stipulation was procured by fraud, then the distribution stipulation would be undermined. As the Claims Court has already determined that the distribution stipulation is valid, this court would be calling into question the validity of the Claims Court judgment. The proper vehicle to raise issues concerning the Anret stipulation is, as the magistrate noted, a motion before the Claims Court. This court has no desire to malign the careful and considered decisions of the Claims Court, especially when the plaintiff has or has had available a suitable procedure with which to raise these claims; accordingly, this court finds that the magistrate committed no error on this issue.

■■■■ The next issue is whether res judicata, which bars the plaintiff's fraud claim against Morgan, operates as a bar to similar fraud allegations against defendants Driver and Bankoff. The issue is whether there is privity between the defendants for purposes of res judicata. The court, after the October 16, 1989, hearing, received briefs from the parties on this question. This issue requires an application of state law, as federal courts must adopt state law to determine preclusive effects when the issue involves considerations concerning the stability of legal relationships, such as privity. *See Hartnett v. Billman*, 800 F.2d 1308, 1314 (4th Cir. 1986); *Restatement (Second) of Judgments* § 87 comment b (1982). The legal relationship in this case is the attorney-client relationship. This relationship was formed in Georgia, and is governed by Georgia law; therefore, Georgia privity law must be examined.

■■■ Georgia law pertaining to res judicata provides that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-40. Privies are defined as all persons who are represented by parties and claim under them, the term privity denoting a mutual or successive relationship to the same rights of property. *Cincinnati, etc., R. Co. v. Hilley*, 118 Ga.App. 293, 294(1), 163 S.E.2d 438 (1968); *Smith v. Wood*, 115 Ga.App. 265, 268(4), 154 S.E.2d 646 (1967).

---

requires this court to employ Claims Court res judicata doctrine, or Fourth Circuit res judicata doctrine. In any event, the Claims Court cases appear to adopt, in general, the preclusion principles found in the *Restatement (Second) of*

*Judgments. E.g. Standard Oil Co. of California v. United States*, 685 F.2d 1337, 1342 (Ct.Cl. 1982); *Considine v. United States*, 645 F.2d 925 (Ct.Cl.1981). Accordingly, this court will rely on Fourth Circuit precedent.

The relationship of attorney and client usually does not involve mutual or successive relationships in the same rights of property.[5] The recent case of *Roberts v. Porter, Davis, Saunders & Churchill*, 193 Ga.App. 898, 389 S.E.2d 361 (1989) is instructive. In that case the plaintiff brought suit against an attorney acting as escrow agent in a real estate transaction, alleging that as escrow agent the attorney failed to properly pay out escrow proceeds. The attorney moved for summary judgment on res judicata grounds, based on the fact that as escrow agent he was in privity with the defendant-buyer of the property. The prior litigation involved in that case was between the plaintiff-seller and the defendant-buyer, with the buyer represented in the prior litigation by the escrow agent-attorney. In *Roberts*, the court classified the escrow agent as the agent of both parties, and determined that the escrow agent's duties were to treat the escrowed property in accordance with the escrow agreement and the law. The court found that the escrow agent had no right or title to the property, but merely held it until the conditions of the escrow agreement were fulfilled. The court then ruled that there was no privity between the attorney and the defendant regarding the prior action, as they merely possessed different rights in the same property. *Roberts*, 389 S.E.2d at 364.

In the present situation, there is no evidence that attorneys Driver and Bankoff have any mutual or successive relationship in the same rights of property with Morgan. The agency relationship between Morgan and its attorneys is not sufficient, standing alone, to establish privity under Georgia law. Accordingly, this court feels that the magistrate erred on this sub-issue. Of course, this court has already found that the side agreement did not exist, and

that even if it did exist, it was merged into the amended buy-sell agreement. Therefore, even though defendants Driver and Bankoff are not in privity with Morgan for purposes of res judicata, liability cannot attach to their alleged actions or inactions in concealing the alleged side agreement, which either did not exist or was merged into the amended buy-sell agreement.

At this point, under normal circumstances, summary judgment would be granted and the case ended in this court. There is, however, another issue that should be discussed. This court has raised, on its own motion, the question of whether the May 17, 1988, decision of the South Carolina Supreme Court not to reopen the Beaufort County foreclosure suit has any preclusive effect in the present case. The parties were requested to brief this issue on February 19, 1989, and the responses were submitted in timely fashion.[6]

Under 28 U.S.C. § 1738, the "judicial proceedings [of any court of any State] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State...." This statute requires a federal court to give the same preclusive effect to a state court judgment as would the courts of the state rendering the decision. *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984); *Moore v. Bonner*, 695 F.2d 799 (4th Cir.1982). Accordingly, reference will be made to the applicable South Carolina preclusion rules.

In South Carolina, the defense of res judicata bars a subsequent suit if the parties are the same or their privies, the subject matter is the same, and the precise point is decided or might have been decided

---

5. Indeed, such an affiliation could often lead to ethically impermissible conflicts of interest between an attorney and the client.

6. Briefs were requested to allow the litigants the opportunity to argue this issue. Although a court, once it has determined that there are no genuine issues of material fact, is free to enter judgment based on legal principles not raised by the parties, some authority holds that the better

practice is to give the parties notice when it intends to rely on doctrines other than those briefed and argued by the litigants. *Ware v. Trailer Mart, Inc.*, 623 F.2d 1150, 1154 (6th Cir. 1980); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2725 (1983). This court requested the briefs to comply with any possible notice requirement.

in prior litigation. *Bagwell v. Hinton*, 205 S.C. 377, 400, 32 S.E.2d 147, 156 (1940). Collateral estoppel precludes a party or his privy from relitigating an issue which was outcome determinative in previous litigation. *Graham v. State Farm Fire & Cas. Ins. Co.*, 277 S.C. 389, 287 S.E.2d 495 (1982). A defendant can assert a plea of collateral estoppel against a plaintiff who had previously had a full and fair opportunity to litigate the relevant issue effectively in a prior action. *Graham*, 287 S.E.2d at 496; *Irby v. Richardson*, 278 S.C. 484, 298 S.E.2d 452 (1982). These two preclusion concepts are traditionally distinguished by reference to the cause of action brought in the second suit. If the causes of action in the suits are identical, res judicata applies. If the second cause of action is different from the first, collateral estoppel may apply. *See* Stewart, *Res Judicata and Collateral Estoppel in South Carolina*, 28 S.C.L.Rev. 451, 452 (1977). The present case is a suit for breach of contract with fraudulent acts, tortious interference with contract, constructive fraud, and fraud. This suit is based on different causes of action than the Beaufort County foreclosure action; therefore, only collateral estoppel could apply in this case.

In the present suit Branning is suing the defendants for their actions with regard to the Anret stipulation and the alleged side agreement. A close reading of the complaint reveals that Branning bases his case on the following facts: the suppression of information concerning the Anret side agreement and the Georgia suit settlement; Driver and Bankoff advising and encouraging Morgan and Anret to enter into the side agreement; the defendants failure to give Branning credit for the Anret settlement; and the defendants making misleading representations to the plaintiff and his counsel concerning the side agreement during the Claims Court proceedings, which induced the plaintiff to sign the Anret stipulation. To paraphrase, there are three critical factual issues. Was there a failure to give Branning proper credit on the Anret settlement in the Georgia suit, was there an

illegal side agreement, and was the side agreement concealed or misrepresented?

In the South Carolina Supreme Court, Branning brought a motion seeking a new trial in the foreclosure suit. The motion was made pursuant to Supreme Court Rule 24, which governs motions for new trials based on after discovered evidence. The motion alleged that Branning was entitled to a further credit because of the Anret settlement with Morgan, and that the side agreement should bar any deficiency judgment. Branning presented to the South Carolina Supreme Court the exact same evidence as presented in this case to support his motion. Branning asks for a further credit from the Anret settlement, argues that there was a side agreement, and attempts to show the concealment of the side agreement. Brief on Motion for New Trial at 10–11, 13, 19. The motion was denied without an opinion on May 17, 1988.

This court finds that the precise issues were raised in both the motion before the South Carolina Supreme Court and the case presently before the court. Both cases attempt to litigate the issues of a proper credit for the Anret settlement and the existence and concealment of the side agreement. Further evidence that the issues in the cases precisely correspond can be seen by examination of the plaintiff's memorandum in support of his objections to the magistrate's report. The recitation of the facts included by the plaintiff in the memorandum is *exactly* identical to the recitation of the facts included in the plaintiff's brief in support of its motion to reopen the foreclosure suit.

While the identical issues presented in this case have already been decided adversely to Branning, it is appropriate to find whether they were outcome determinative; i.e., that the determination was essential to the judgment in the motion before the South Carolina Supreme Court. *See Restatement (Second) of Judgments* § 27 (1982). Under South Carolina law, five requirements must be met before a new trial will be granted. The evidence must be such as will probably change the result if a new trial is granted, the evidence has been

discovered since the trial, the evidence could not have been discovered before the trial by the exercise of due diligence, the evidence is material to the issue, and the evidence is not merely cumulative or impeaching. *Ortowski v. Ortowski,* 237 S.C. 499, 117 S.E.2d 860 (1961).

Failure to meet any one of these five requirements will result in denial of a new trial motion. Unfortunately, the South Carolina Supreme Court did not set forth its reasons for denying the motion. However, if the dismissal was based on a failure to show a probable change in the result, or that the evidence was not material to the issue, or that the evidence is merely cumulative or impeaching, then the South Carolina Supreme Court must have evaluated the evidence. If the denial were based on any one of these grounds, the factual issues were determined on the merits. Therefore, because the determination of these factual issues were essential to the judgment, the denial of the motion on any of these three grounds was sufficient to allow application of collateral estoppel.

In the alternative, if the motion was denied because the evidence was known before the trial, or because it could have been discovered before the trial by the exercise of due diligence, this case must still be dismissed. Although the South Carolina Supreme Court would have denied the motion on technical grounds, and the resolution of the factual issues would not be essential to the judgment, this would mean that the court arrived at conclusions this court cannot ignore. These conclusions are that the plaintiff possessed the evidence, or should have acquired the evidence, in or before the foreclosure suit. This means that Branning must or should have been aware of the new evidence before November, 1978, which is when the foreclosure trial was held. As the present suit was commenced June 26, 1985, this means that the South Carolina Supreme Court has determined that Branning knew the facts on which he based his new trial motion for some six and one-half years before the present suit was filed. Under S.C.Code Ann. § 15–3–350, the applicable statute of limitations in this case is six years after the plaintiff knew, or by the exercise of reasonable diligence should have known, that he had a cause of action. Accordingly, the South Carolina Supreme Court has, in effect, alternatively determined that Branning's present suit is barred by the statute of limitations.

■ There is one final issue to be considered; namely, whether a dismissal under Supreme Court Rule 23 can be given preclusive effect. Generally, one requirement of collateral estoppel is a valid and final judgment. *See Restatement (Second) of Judgments* § 27 (1982). Examination of the South Carolina precedents reveals that a judgment under Rule 23 is sufficient for purposes of res judicata. *Vogel v. City of Myrtle Beach,* 291 S.C. 229, 353 S.E.2d 137 (1987); *Hudson v. Martin,* 283 S.C. 577, 324 S.E.2d 69 (1984). This court can discern no reason for the South Carolina courts to find that a final judgment for purposes of res judicata is not a final judgment for purposes of collateral estoppel; therefore, the denial of the motion for a new trial must be given preclusive effect.

Accordingly, this court finds that the magistrate properly resolved the issues presented by the objections, except for the determination that defendants Driver and Bankoff are in privity with defendant Morgan. However, this court has determined that these two defendants are entitled to summary judgment on other grounds. Therefore, for the reasons contained in the Magistrate's report and recommendation, and for the reasons contained herein, it is

ORDERED, that the defendants named herein are hereby granted summary judgment.

IT IS FURTHER ORDERED, that each side shall pay its own costs and attorneys' fees.

IT IS SO ORDERED.