46307. FICKLING & WALKER COMPANY v. GIDDENS CONSTRUCTION COMPANY, INC.
(376 SE2d 655)

MARSHALL, Chief Justice.

This case, *Giddens Constr. Co., Inc. v. Fickling & Walker Co.*, 188 Ga. App. 558 (373 SE2d 792) (1988), is here on certiorari. Drawn into question are issues concerning the extent of the fiduciary obligations owed by a real-estate broker to the parties to a real-estate sale contract, where the broker is acting as the escrow agent for earnest money and other funds deposited by the buyer. The specific question for decision is whether the trial court erred in granting partial summary judgment in favor of the real-estate broker with regard to a claim for punitive damages asserted by the seller; the basis for the punitive-damage claim was the broker's refusal to agree to an uncon-

ditional release of the escrow money to the seller when the sale was not consummated within the contractually required time limit.

## Facts

In order to sell certain improved real estate in Macon, Georgia, Giddens Construction Co., Inc. (Giddens), the owner of the property and the builder of the home located thereon, retained the services of Sheridan, Solomon & Co. (Sheridan), a real-estate broker who thereby became the listing agent for the property sale.

Fickling and Walker Co. (Fickling), is another real-estate broker located in Macon, Georgia. Both Sheridan and Fickling are members of an organization known as the Macon Multiple Listing System (MLS). The MLS is an organization of real-estate brokers; where property is listed for sale by a member broker as the listing sales agent, information regarding the proposed terms of the sale and a description of the subject property are made available to other member brokers, who seek to secure prospective purchasers.

Pursuant to this arrangement, Fickling secured Alan and Bettye Roberson (the Robersons) as prospective purchasers for the Giddens' property.

A real-estate sale contract was entered into between Giddens and the Robersons on July 27, 1985. The sale contract contained certain financing contingencies, and it was required that the sale be closed on or before October 30, 1985. Under the terms of the contract, $1,000 in earnest money was deposited with Fickling by the Robersons in Fickling's capacity as "escrow agent."

Because the Robersons wished to take possession of the property prior to their obtaining financing and closing the sale, a "move-in agreement" was entered into between the parties. This agreement allowed the Robersons to take possession of the property as of August 10, 1985, and the Robersons were required to pay Giddens a $750 monthly rental fee, as well as make a $400 security deposit to be held by Fickling. In this agreement, reference was made to Fickling as "[s]eller's agent."

The closing of the property sale did not take place as of October 30, 1985, as required by the sale contract. Consequently, an addendum to the sale contract was executed on November 2, 1985, for the purpose of extending the closing date until November 30, 1985, as well as extending the move-in agreement and rental payment by one month. The addendum also contained the following paragraph:

It is expressly understood and agreed to by all parties that, if for any reason this sale is not consummated by November 30, 1985, the $1,000 earnest money and the $400 security de-

posit shall be forfeited as liquidated damages and the sales contract shall become null and void. In such event purchaser shall vacate premises no later than December 10, 1985. Time is of the essence.

The sale did not close as of November 30, 1985, as required by the addendum. Giddens, by letter dated December 12, 1985, demanded that Fickling remit to Giddens the $1,000 in earnest money and the $400 security deposit being held in escrow.

On December 23, 1985, an officer of Fickling tendered to Giddens' counsel a $1,400 check for the foregoing sums and a mutual-release agreement signed on behalf of the Robersons. Under the terms of the release agreement, the seller and the purchasers were to be released from "any and all claims or obligations" arising from the sale contract. Fickling sought to obtain the signatures of all parties on this agreement, because Fickling was of the opinion that Regulation § 520-1-.34 (2) (d) —an administrative regulation promulgated by the Georgia Real Estate Commission — required Fickling, as escrow agent, to secure such an agreement signed by all parties at interest prior to disbursing the funds from the escrow account.

Giddens' counsel refused to sign the release and suggested that resolution of the controversy be deferred until after the Christmas holidays. Giddens' counsel next contacted Fickling on January 6, 1986. When it became apparent that the parties were unable to resolve this matter in a manner satisfactory to Giddens, Giddens' counsel suggested that Fickling consult with its attorney. Before such consultation could be arranged, the instant action was filed by Giddens on January 15, 1986.

In this action, Giddens has sought, among other things, an award of punitive damages for breach of fiduciary duty, fraud, and conversion, as a result of Fickling's refusal to agree to an unconditional release of the escrowed funds on demand by Giddens. Fickling responded to the action, tendering the subject monies into the court registry. The trial court granted Fickling's motion for partial summary judgment with respect to Giddens' punitive-damage claim.

## Court of Appeals' Decision

On appeal, the Court of Appeals reversed the foregoing ruling.

Initially, the Court of Appeals rejected Fickling's argument that punitive damages are not awardable here, since this is an action for breach of contract. In this regard, the Court of Appeals held that Fickling could be held liable to Giddens in tort, in addition to being held liable for breach of contract, in that the facts of this case estab-

lish that Fickling was Giddens' duly appointed subagent[1] and thus was Giddens' fiduciary regarding those matters within the scope of the agency.

The Court of Appeals next held that under the language employed in the addendum to the sale contract, Fickling was under an unequivocal duty to remit the escrow monies to Giddens if, for any reason, the property sale was not consummated by November 30, 1985. In this regard, the Court of Appeals reasoned that when the sale was not consummated as of the foregoing date, there was a termination of the escrow agreement, as well as any dual agency that may have existed pursuant thereto, thereby resulting in Fickling's resuming to act solely as Giddens' fiduciary. On this basis, the Court of Appeals concluded that Fickling thereby became subject to a duty owed by an agent to its principal not to dispute the principal's right or title to funds received by the agent for the account of the principal. *Courts v. Jones*, 61 Ga. App. 874, 876 (8 SE2d 178) (1940) and cits.

Finally, the Court of Appeals rejected Fickling's claim that it is shielded from liability, in that, in setting down the conditions for release of the money in escrow, it was merely following requirements contained in Regulation § 520-1-.34, supra, of the Georgia Real Estate Commission.[2]

---

[1] Both *Dolvin Realty Co. v. Holley*, 203 Ga. 618 (48 SE2d 109) (1948), and *Stanford v. Otto Neiderer & Sons*, 178 Ga. App. 56 (1) (341 SE2d 892) (1986), were cited in the Court of Appeals' opinion in support of its holding that, under the facts of this case, Fickling was the duly appointed subagent of Giddens.

In the *Dolvin Realty* case, real estate was listed for sale with a realty company; within the scope of his employment, a sales agent employed by the realty company had inspected the property and become privy to confidential information concerning a sales price lower than the listing price which the property owner might be willing to accept. The agent tried to buy the property at the lower price. There, it was held that, under these circumstances, the sales agent was, in legal contemplation, the principal's "subagent," and "[i]t became the duty of the agent to act primarily and solely for the benefit of the principal in all matters connected with the agency." 203 Ga. at p. 622.

In the *Stanford* case, the defendant Stanford was the president and sole employee of a corporation named Southeastern Agri-Systems (Southeastern); in addition, he owned 98 percent of the corporate stock. The relationship of principal and agent undeniably existed between Southeastern and another corporation named Otto Neiderer & Sons (Neiderer). Notwithstanding the fact that the sole party with whom Neiderer had dealt was Stanford, Stanford argued that in his individual capacity he was a mere corporate employee and, thus, owed to Neiderer no duty whatsoever. This argument was rejected, on grounds that the corporate president, Stanford, was the subagent of the principal, Neiderer, in that, "[i]n the instant case, all the requirements for a subagent being the agent of the principal are satisfied." 178 Ga. App. at p. 57.

It can thus be seen that, on its facts, the present case is clearly distinguishable from these other cases.

[2] Regulation § 520-1-.34, promulgated by the Georgia Real Estate Commission, provides in full:

(1) A broker who disburses trust funds from the broker's designated trust or escrow account contrary to the terms of a contract for the sale or rental of real estate, or other contract creating the escrow, or who fails to disburse trust funds according to

## *Holdings*

For reasons which follow, we reverse. In this regard, we hold that during the period in which Fickling remained in possession of the escrow-money fund, Fickling continued to function as the dual agent of both seller and buyers, and not the subagent of only one. We further hold that, notwithstanding the contractual language purporting to give Giddens an automatic entitlement to the escrow money upon failure of the sale to be consummated by the specified date, there is no basis in the evidence to support an award of punitive damages against Fickling for its action in regard to disbursement of the escrow money here.

1. As previously stated, the present case involves a real-estate broker's acting as an escrow agent for the purpose of holding earnest money and a security deposit tendered by the real-estate purchasers. *Williams v. Northside Realty Assoc., Inc.*, 116 Ga. App. 253, 254 (157 SE2d 166) (1967) and *Carter v. Turbeville*, 90 Ga. App. 367, 370-371 (1a) (83 SE2d 72) (1954), clearly explain that in a situation such as this, the escrow agent is properly classified as the agent of both parties, rather than as a subagent of only one of the parties with a fiduciary responsibility owed solely to that party.

(a) As stated in *Williams*,

---

the terms of any contract creating the escrow, will be considered by the Commission to have demonstrated incompetency to act as a real estate broker in such manner as to safeguard the interest of the public.

(2) A broker who disburses trust funds from a designated trust account under the following circumstances shall be deemed by the Commission to have fulfilled properly the broker's duty to account for and remit money which the broker is required to maintain and deposit in a designated trust account:

(a) upon the rejection of an offer to buy, sell, rent, lease, exchange, or option real estate;

(b) upon the withdrawal of an offer not yet accepted to buy, sell, rent, lease, exchange, or option real estate;

(c) at the closing of the transaction;

(d) upon securing a written agreement which is signed by all parties having an interest in the trust funds and is separate from the contract which directs the broker to hold the funds;

(e) upon the filing of an interpleader action in a court of competent jurisdiction;

(f) upon the order of a court of competent jurisdiction; or

(g) upon a reasonable interpretation of the contract which directed the broker to deposit the funds.

(3) When a broker decides to make a disbursal to which all parties to the contract do not expressly agree, the broker must notify all parties in writing of the intent to disburse. Such notice shall be delivered by certified mail to the parties' last known addresses and must recite to whom and when the disbursal will be made. The disbursal in such disputed cases should not occur before 30 days from the date of the notice to the parties.

Georgia is among the states which hold that money or an instrument evidencing indebtedness may be the subject of an escrow, and that a real estate broker under these circumstances is an escrow agent. *Carter v. Turbeville*, 90 Ga. App. 367 (83 SE2d 72); *McGinley v. Chappas*, 91 Ga. App. 418 (1) (85 SE2d 791). As such, he is the agent of both parties, and no liability attaches from his failure to do anything not required by the express terms of the escrow or the intention and agreement of the parties. 30A CJS 992, Escrows, § 8.

*Williams v. Northside Realty Assoc., Inc.*, 116 Ga. App. 253, supra at 254.

(b) As stated in *Carter*,

the Supreme Court in *Wellborn v. Weaver*, 17 Ga. 267, 275, said: 'In every case of an escrow there is a contract and privity between the grantor and grantee. The person to whom the deed is delivered is, by mutual agreement, constituted the agent of both parties.'

See, in this connection, 19 AmJur 430, sec. 13, as follows: 'In a broad sense, every depositary of an escrow is the agent of both parties. For the purpose of making delivery upon the performance of the conditions, he is no less the agent of the grantee than the agent of the grantor. He is empowered to aid neither, being merely the conduit used in the transaction for convenience and safety. He may, therefore, be looked upon as a special agent of both parties, with powers limited only to those stipulated in the escrow agreement. Strictly, however, the depositary is not an agent at all, but rather the trustee of an express trust with duties to perform for each of the parties, which duties neither can forbid without the consent of the other. When the depositary knows the terms of the agreement so that he may understand his duties, he acts by virtue of his own powers, and not as agent of anybody. To call him the agent of the parties leads to confusion. It is better to treat him, in accordance with his capacity, as a third party to whom the principal parties to the contract have intrusted certain authority by the escrow agreement. He must look to that intrusted authority for his powers and duties.'

*Carter v. Turbeville*, 90 Ga. 367, supra at 370-371 (1a).

2. Punitive damages are authorized whenever there is evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that

entire want of care which would raise the presumption of a conscious indifference to consequences. *Deavers v. Standridge,* 144 Ga. App. 673, 676 (3) (242 SE2d 331) (1978) and cits.

Thus, the questions are: (1) whether Fickling, in moving for partial summary judgment with regard to Giddens' punitive-damage claim, carried its burden of proving the nonexistence of any genuine issue concerning the facts material to the recovery of punitive damages; and (2) whether Giddens then carried its resulting burden of establishing the existence of a material issue of fact on this question. *Liberty Life Ins. Co. v. Hartley Constr. Co.,* 258 Ga. 808 (375 SE2d 222) (1989), reversing *Hartley Constr. Co. v. Liberty Life Ins. Co.,* 187 Ga. App. 849 (371 SE2d 657) (1988).

3. Fickling seeks to justify its refusal to agree to Giddens' demand for a prompt and unconditional release of the escrow monies by arguing that upon failure of the contract to be consummated within the contractually required time limit, reasonably debatable questions of law nonetheless continued to exist with respect to the seller's legal entitlement to the escrowed monies' "be[ing] forfeited as liquidated damages," as stated in the addendum to the sale contract. Cf. *Panfel v. Boyd,* 186 Ga. App. 214 (2b) (367 SE2d 54) (1988).[3]

In *Southeastern Land Fund, Inc. v. Real Estate World, Inc.,* 237 Ga. 227 (227 SE2d 340) (1976), this Court established a tripartite test for determining the legality and enforceability of a purported liquidated-damage provision in a real-estate sale contract, authorizing the seller to retain earnest money paid by the buyer in the event of a breach of contract by the buyer.[4] As stated in the *Southeastern Land Fund* case, the question is whether such a clause is enforceable as a valid provision for liquidated damages or unenforceable as an invalid provision for payment of a penalty. In making such a determination, the factors composing the tripartite inquiry were enunciated in the *Southeastern Land Fund* case as follows:

'First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and

---

[3] *Panfel* involved a contractual provision in a real-estate sale contract unconditionally requiring refund to the buyer of his earnest-money deposit, if the sale was not consummated, due to the buyer's default or otherwise. It was noted in *Panfel* that this earnest-money provision was of unquestioned validity, as well as being clear and unambiguous.

[4] In this regard, we note that there does exist a factual distinction between this case and the *Southeastern Land Fund* case, in that here, the contractual entitlement to the earnest money accrues upon the mere failure to consummate the contract by a certain date, notwithstanding the question of whether this resulted from the buyers' breach of contract. However, the parties have made no reference to this factual distinction; nor have they presented arguments on the question of whether the factual distinction is material.

third, the sum stipulated must be a reasonable pre-estimate of the probable loss.' Calamari & Perillo, The Law of Contracts, 367 (1970). See *Tuten v. Morgan*, 160 Ga. 90, 92 (127 SE 143) (1924), and *Bernhardt v. Federal Terra Cotta Co.*, 24 Ga. App. 635 (101 SE 588) (1919). See also *Martin v. Lott*, 144 Ga. 660 (87 SE 902) (1915).

237 Ga. at p. 230.

For several reasons, Fickling contends that there exist debatable questions as to whether the liquidated-damage provision here meets the foregoing tripartite inquiry.

In this regard, Fickling suggests that it could be held that the term "forfeited" in the addendum to the sale contract evinces an intent on the part of the parties to impose a forfeiture constituting an unenforceable penalty rather than a reasonable pre-estimate of the probable loss the seller might be expected to suffer in the event of the buyer's failure to close the transaction.

As further stated in *Southeastern Land Fund*, 237 Ga., supra at 230, a non-breaching party who has agreed to accept liquidated damages cannot elect after a breach to take actual damages should they prove greater than the sum specified. The breaching party cannot complain that the actual damages are less than those specified as liquidated damages. The liquidated damages become the maximum as well as the minimum sum that can be collected. Thus, notwithstanding the question of whether execution of the release as a condition to the broker's disbursal of the escrow money was in fact required under Regulation § 520-1-.34 (2) (d),[5] the release tendered by Fickling to Giddens here did serve to enforce the rule in the law of liquidated damages prohibiting the non-breaching party from recovering actual damages exceeding the liquidated-damage sum.[6]

We therefore conclude that Fickling was entitled to summary judgment as to the punitive damages claim.

*Judgment reversed. All the Justices concur, except Hunt, J., who concurs in the judgment only.*

---

[5] See note 1, supra.

[6] As previously stated, one factor in the *Southeastern Land Fund* tripartite inquiry is whether the stipulated sum is a reasonable pre-estimate of the probable loss of the non-breaching party resulting from the other party's breach of contract.

Here, as in the *Liberty Life Ins. Co.* case, the seller ultimately resold the subject property to others at a higher price than that contained in the contract with the original buyer. Under our decision in *Liberty Life*, we reversed the Court of Appeals' holding that, under the foregoing circumstances, "the record does not establish that the contractual provision in question constituted an enforceable liquidated damages provision." 187 Ga. App. at 850 (1).

DECIDED FEBRUARY 23, 1989.

*Hall, Bloch, Garland & Meyer, Ellsworth Hall III,* for appellant.
*Cook & Shaffer, E. Thomas Shaffer,* for appellee.
*Quentin S. King, Edward C. Stone,* amicus curiae.