A89A0856. ROBERTS et al. v. PORTER, DAVIS, SAUNDERS & CHURCHILL et al.
(389 SE2d 361)

BEASLEY, Judge.
Mr. and Mrs. Roberts appeal from a judgment based on stipulated facts presented to the Fulton Superior Court. Although the parties refer to the judgment as having resulted from the court's consideration of their motions for summary judgment/directed verdict, the court entered judgment pursuant to OCGA § 9-11-52.

The Robertses sold their farm to Sweetwater Farms, Inc., on August 4, 1983. The closing attorney was Joseph Churchill, a partner in Porter, Davis, Saunders, & Churchill.

The Robertses had work performed on a barn on the property. Their contract was with Jimmie Dale Beck d/b/a Custom Farms Building Company. He had been paid in full by the Robertses, but had not in turn paid his subcontractor, North Brothers. He has since filed bankruptcy. North Brothers filed their lien pursuant to OCGA § 44-14-320 et seq. on February 10, 1983. The Robertses contend that the work performed by North Brothers was not satisfactory. On July 29, Mr. Roberts filed a property bond, approved by the clerk, to release the lien.

As a part of the closing, Sweetwater and the Robertses agreed that a portion of the purchase price due to the Robertses in an amount equal to the lien, $5,471.12, plus another $1,000, would be put into escrow with Porter. The closing statement reflected the "Lien to North Bros. Co." as a miscellaneous item. No written escrow agreement is in the record, but it was stipulated that the $1,000 was to be held until such time as the Robertses could deliver an executed quitclaim deed and that the $5,471.12 was escrowed because of the lien

and it would "be used to pay off the debt [to North Brothers] *if found to be owing by defendants."* (Emphasis supplied.) The Robertses were the defendants in the Cobb litigation.

On October 21, Sweetwater Farms, represented by Porter, sued the Robertses in Cobb Superior Court, contending that the Robertses had failed to remove the lien, breaching the Sales Contract and entitling Sweetwater to the escrow fund; an order directing the Robertses to provide the quitclaim deed was sought.

The Robertses counterclaimed, contending that the quitclaim deed had been provided and that the lien had been bonded off the property, thereby entitling them to the escrow funds because of Sweetwater's breach of the contract represented by the Closing Statement containing the escrow agreement.

On October 18, 1985, the Cobb court entered its order after trial. The court found that both Sweetwater and the Robertses agreed for the money to be placed in escrow; that the Robertses disputed the North bill; and that, at the closing, Sweetwater was aware of this dispute.

The Cobb order found that the disputed amount had been paid to North Brothers on August 26, 1983, by delivery of a Porter trust account check in the amount of $5,338 paid to Kutak, Rock & Huie, attorneys for North Brothers. Neither Sweetwater nor its agent Tucker "paid *anything* to North Brothers out of personal funds, and, therefore, completely fails to prove it's (sic) contentions in Count One . . . . The Court further finds that there is insufficient evidence before the Court to decide the disputed North Brothers bill, which was the basis for the lien and the escrow deposit, inasmuch as nothing has been presented from which the Court could make a determination of the *value* of the work done, if any. Further, a necessary party, the escrow agent, has not been joined by either party, nor filed an interpleader in this action. Judgment for the [Robertses] as to Counts One and Two of [Sweetwater's] petition [based on breach of the Sales Contract]. Judgment for [Sweetwater] on the [Robertses'] failure to prove their counterclaim [based on breach of the escrow contract by Sweetwater]."

This ruling was not appealed, but on December 30, 1985, the Robertses filed their Fulton complaint against Porter, alleging that Porter paid North Brothers without their permission and failed to obtain an assignment of the lien claim making the lien unenforceable and entitling them to the proceeds.

In its answer, filed in February 1986, Porter admitted holding the fund; that the funds had not been delivered to the Robertses; that North Brothers had been paid but denied the necessity of the Robertses' consent for such a payment; and admitted that the lien claim of North Brothers was no longer an encumbrance on the prop-

erty.

Thereafter, in March 1987, Porter amended its answer, adding the defenses of res judicata and collateral estoppel and adding its claim for costs and attorney fees, which claim was not available, as OCGA § 9-15-14 did not apply. *Vogtle v. Coleman*, 259 Ga. 115, 116 (2) (376 SE2d 861) (1989).

The Fulton court held that it was bound by the Cobb order because of privity between Porter and Sweetwater. It further found the Robertses' argument concerning the lien to be "inappropriate and moot. That issue was litigated in the Cobb County action and disposed of therein."

1. " 'OCGA § 9-12-40 provides that "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside." OCGA § 9-12-42 provides that "[f]or a former judgment to be a bar to a subsequent action, the merits of the case must have been adjudicated." These code sections together set out the basic principles of res judicata in Georgia. For res judicata to act as a bar of a subsequent action, the original and subsequent action must bear certain identical characteristics. The two actions must be between identical parties or their privies, and the cause of action in each suit must be identical. Collateral estoppel, like res judicata, requires identity of parties or privity. However, unlike res judicata, collateral estoppel does not require identity of the claim but only precludes readjudication of an issue already adjudicated between the parties or their privies in a prior action. (Cit.)' *Norris v. Atlanta &c. R. Co.*, 254 Ga. 684-685 (333 SE2d 835) (1985). 'Further, the doctrine of res judicata will bar an action "even if some new factual allegations have been made. . . ." (Cits.)' *Williams v. Summit Psychiatric Centers*, 185 Ga. App. 264, 267-268 (6) (363 SE2d 794) (1987)." *City of Macon v. Pasco Bldg. Systems*, 191 Ga. App. 48, 50 (380 SE2d 718) (1989).

The present litigation is between the seller in a real estate transaction and the escrow agent for both seller and buyer. The prior litigation was between seller and buyer, in which the buyer was represented by the escrow agent acting as attorney. There being a difference in parties, it must be determined if Porter was "in privity" with Sweetwater for purposes of res judicata and collateral estoppel.

One serving as an escrow agent is governed by certain principles. "[I]n a situation such as this, the escrow agent is properly classified as the agent of both parties, rather than as a subagent of only one of the parties with a fiduciary relationship owed solely to that party." *Fickling & Walker Co. v. Giddens Constr. Co.*, 258 Ga. 891, 895 (1) (376 SE2d 655) (1989). There is in such a situation a contract and

privity between the grantor and grantee, and the third party is by mutual agreement constituted escrow agent of both. *Fickling*, supra at 896.

The escrow agent's rights and duties are as described by law and by the escrow agreement. *Marathon U. S. Realties v. Kalb*, 244 Ga. 390, 392 (260 SE2d 85) (1979). The agent's purpose is only to fulfill the terms of that agreement. "Title [of the escrowed property] remains in the depositor who surrenders his property to the third party, until all conditions of the escrow are accomplished or it is abandoned and he or another receives the property from the depository. [Cit.]" *Collins v. Norton*, 136 Ga. App. 105 (1) (220 SE2d 279) (1975).

Thus, the escrow agent has no right to the property which he holds but is bound only to treat the property as required by the escrow agreement and the law.

"Of course, parties include privies, usually defined as all persons who are represented by parties and claim under them, the term privity denoting a mutual or successive relationship to the same rights of property [cits.], *but not different rights in the same property.* [Cits.]." (Emphasis supplied.) *Cincinnati &c. R. Co. v. Hilley*, 118 Ga. App. 293, 294 (1) (163 SE2d 438) (1968); *Smith v. Wood*, 115 Ga. App. 265, 268 (4) (154 SE2d 646) (1967).

Laying aside the issue of Porter's allegiance to both seller and buyer, it is clear from the foregoing that Porter was not in privity with Sweetwater for purposes of res judicata and collateral estoppel. See *A. R. Hudson Realty v. Hood*, 151 Ga. App. 778, 779 (1) (262 SE2d 189) (1979), overruled on other grounds, *Merrill Lynch &c. v. Zimmerman*, 248 Ga. 580 (285 SE2d 181) (1981).

2. There is a further impediment to the res judicata/collateral estoppel claim, that of proof. In order to prove res judicata or collateral estoppel, a litigant must introduce those portions of the prior proceeding, duly certified, which are necessary to prove the defense. *Boozer v. Higdon*, 252 Ga. 276, 277 (313 SE2d 100) (1984). Only the Order of the Cobb court, but not the Complaint and Answer, is certified. Secondly, they do not reveal which issues involved in the present suit, if any, were definitely decided by that court, another requirement. OCGA § 24-7-20; *Glen Oak, Inc. v. Henderson*, 258 Ga. 455, 456 (1a) (369 SE2d 736) (1988).

The grant of judgment to Porter was error.

3. The next question is whether judgment should have been entered in favor of the Robertses. All agree that the quitclaim deeds for which the $1,000 was escrowed have been delivered, fulfilling this condition of the escrow and entitling the Robertses to judgment on that item. The remainder of the money was escrowed for the sole purpose of satisfying the lien of North Brothers if the Robertses were found to owe the money.

The lien was filed on February 10, 1983, pursuant to the Mechanics & Materialman's Lien Statute, OCGA § 44-14-360 et seq. The filing of a lien by an unpaid subcontractor, as occurred here, does not mean the lien will automatically ripen into foreclosure of the real property. The lien statutes are strictly construed and strict compliance with them is required. *Allied Elec. Contractors v. Kern & Co.*, 184 Ga. App. 747, 748 (362 SE2d 452) (1987). The contract under which the work was performed must have been substantially complied with and the lien must be filed within three months of completion of the work and in compliance with the statute. OCGA § 44-14-361.1 (a) (1) & (2). Since the prime contractor had filed bankruptcy, North Brothers could have perfected its lien by foreclosing against the property "if filed within 12 months from the time the lien becomes due." OCGA § 44-14-361.1 (a) (4).

Before such a suit was filed, Mr. Roberts posted a property bond on July 29, 1983, pursuant to OCGA § 44-14-364. The effect of such a bond is to serve as a replacement for the lien. *North v. Waffle House*, 177 Ga. App. 162, 163 (1) (338 SE2d 750) (1985); *Stonepecker, Inc. v. Shepherd Constr. Co.*, 188 Ga. App. 513 (373 SE2d 295) (1988). After such a bond is filed, "it is still incumbent upon the lien claimant who brings suit against the principal and surety on the bond to prove entitlement to the underlying lien. [Cit.]" *North*, supra.

After the bond was filed and the lien thereby released, Sweetwater chose for reasons of its own to voluntarily pay North the amount claimed due, the cause of action against the property having been extinguished. Having done so, Sweetwater made it legally impossible for a determination to be made that the Robertses owed any money to North Brothers. The only mechanism for doing so would have been during suit on the bond, but unnecessary payment by Sweetwater obviated that.

Therefore, the Robertses were entitled to the funds which had been paid to them for the property by Sweetwater and placed in escrow by them with Porter for this contingency which is now legally impossible.

*Judgment reversed. Carley, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 20, 1989 —
REHEARING DENIED DECEMBER 15, 1989.

*Bannister & Black, Charles C. Black*, for appellants.
*Churchill & Ferguson, Glenn A. Delk*, for appellees.