**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 6, 2014**

# In the Court of Appeals of Georgia

A14A1268. RUMSEY v. GILLIS et al.

ANDREWS, Presiding Judge.

Peter Rumsey sued Ray and Nancy Gillis for damages for breach of a "Lease/Purchase Agreement" (the Agreement) by which the Gillises agreed to lease and then purchase Rumsey's residence. We consider Rumsey's appeal from the trial court's grant of summary judgment in favor of the Gillises on all of his claims. For the following reasons, we affirm in part and reverse in part.

In April 2011 the Gillises and Rumsey entered into the Agreement, which provided that the Gillises agreed to purchase the residence from Rumsey for the sum of $550,000.00; that the closing would occur on or before April 30, 2014; that, commencing in May 2011 until the closing date, the Gillises would lease the residence from Rumsey pursuant to a lease attached as an exhibit to the Agreement;

and that, when the Agreement was entered into by the parties, the Gillises paid earnest money in the amount of $10,000.00 held by Rumsey. The Agreement also contained a liquidated damages clause providing that earnest money retained in the event of default constitutes liquidated damages in full settlement of all claims. The Agreement provided that, if the lease was terminated before the closing date by default of the Gillises, that was considered a default of the Agreement entitling Rumsey to pursue available remedies. The attached lease provided for payment of rent in the amount of $3,500.00 per month for a lease term commencing on May 3, 2011, and ending on the closing date of the purchase. The Gillises did not purchase the residence pursuant to the Agreement; rather, the Gillises vacated the residence and ceased paying rent in November 2011, and Rumsey retained the $10,000.00 in earnest money and subsequently sold the residence to a third party.

After retaining the $10,000.00 in earnest money paid by the Gillises, Rumsey sued the Gillises in December 2011 for breach of the Agreement seeking damages allegedly caused by the Gillises' failure to purchase the residence and pay rent due under the lease. After Rumsey sold the residence in March 2012 to a third party for $437,000.00, he sought damages for breach of the purchase agreement in the amount of $113,000.00 (the difference between the third party sales price and the

2

$550,000.00 sales price in the Agreement). As to damages under the lease agreement, Rumsey sought unpaid rent from November 2011 (when the Gillises vacated the residence and ceased rent payments) to the date he sold the residence to a third party in March 2012, plus late fees and interest associated with the unpaid rent for that period.

The Gillises answered and counterclaimed against Rumsey. In their amended answer, the Gillises asserted various defenses including (1) the defense that the Agreement was unenforceable, and (2) the alternative defense that, if an enforceable Agreement existed, it contained an enforceable liquidated damages clause under which Rumsey retained the $10,000.00 in earnest money as damages in full settlement of any breach of the Agreement, and that this barred Rumsey's claims. In two counterclaims against Rumsey, the Gillises asserted: (1) that, because the Agreement was unenforceable, they were entitled to return of the $10,000.00 they paid as earnest money, and (2) that, during the period they occupied the residence and paid rent under the lease, they suffered damage as a result of Rumsey's breach of his duty to keep the residence in good repair.

The Gillises moved pursuant to OCGA § 9-11-56 for summary judgment on all of Rumsey's damage claims under the Agreement. The summary judgment motion

3

was based on the same alternative defense asserted in the amended answer – that all of Rumsey's claims were barred by an enforceable liquidated damages clause in the Agreement. Accordingly, for purposes of the motion, the Gillises conceded that the Agreement was enforceable and that they breached it by terminating the lease and refusing to purchase the residence. The Gillises asserted they were entitled to summary judgment because, pursuant to the liquidated damages clause, Rumsey retained the $10,000.00 in earnest money as damages in full settlement of all his claims that they breached the Agreement. The trial court granted the motion ruling that the liquidated damages clause was enforceable; that Rumsey retained the earnest money in full satisfaction of his claims that the Gillises breached the Agreement; and that this entitled the Gillises to summary judgment on all of Rumsey's claims.

1. Rumsey claims the trial court erred by granting summary judgment to the Gillises on the basis that all of his claims were barred by the liquidated damages clause in the Agreement.

To prevail on a motion for summary judgment, "the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Lau's Corp. v. Haskins*, 261 Ga. 491, 491 (405 SE2d 474) (1991);

4

OCGA § 9-11-56. Applying this standard, we find that the trial court correctly granted summary judgment in favor of the Gillises on Rumsey's claims seeking to collect damages for breach of the Agreement in excess of the $10,000.00 of earnest money that he retained.

Under OCGA § 13-6-7, "[i]f the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby." The Agreement at issue for purchase of the residence (for $550,000.00), and for the buyers' lease of the residence (until closing), required the Gillises, as buyers, to deposit earnest money with Rumsey, as seller, in the amount of $10,000.00. The Agreement contained a liquidated damages provision which stated:

> If the [earnest money] check is accepted and deposited by Seller it shall constitute liquidated damages in full settlement of all claims of Seller against Buyer. Such liquidated damages are not a penalty and are instead a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain. Nothing herein shall prevent the Seller from declining the tender of the earnest money. . . .

The Agreement in its pre-printed form set forth conditions governing return of the earnest money to the buyer (e.g., termination of the agreement due to fault of the

5

seller) or disbursement[1] of the earnest money to the seller (e.g., termination of the agreement due to fault of buyer). The printed Agreement also contained a subsequently-added handwritten stipulation concerning earnest money which states: "Earnest money is non-refundable if property does not close."

Rumsey contends that the handwritten stipulation controls, renders the liquidated damages provision inapplicable, and shows that the parties agreed that, if there was no closing on the residence, he was entitled to retain the earnest money and sue the Gillises for breach of the Agreement to recover his actual damages. "In the construction of contracts there is a rule that a [handwritten] portion prevails over a printed portion, where the two cannot be reconciled." *Stanley v. Greenfield*, 207 Ga. 390, 390 (61 SE2d 818) (1950); *Lester v. Crooms, Inc.*, 157 Ga. App. 377, 379 (277 SE2d 751) (1981). Applying the rules of contract construction, we find that the handwritten stipulation can be reconciled with the liquidated damages provision.

> [T]he construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the

---

[1] Although the Agreement contained provisions for the earnest money to be disbursed to the Seller by the "Holder" of the earnest money, it is undisputed that Rumsey, the seller, was also designated in the Agreement as holder of the earnest money. Accordingly, provisions for disbursement from a separate holder to the seller are inapplicable.

court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Because the first two of these steps involve questions of law, the trial court's application of them is reviewed de novo on appeal.

*City of Baldwin v. Woodard & Curran, Inc.*, 293 Ga. 19, 30 (743 SE2d 381) (2013) (punctuation and citation omitted); *Copy Systems of Savannah, Inc. v. Page*, 197 Ga. App. 435, 436 (398 SE2d 784) (1990). The handwritten stipulation providing that the earnest money held by Rumsey was non-refundable if no closing occurred, is not inconsistent with Rumsey's retention of the earnest money pursuant to the liquidated damages provision as full settlement of his claims against the Gillises for breaching the Agreement and failing to close. Accordingly, we find that the language of the Agreement unambiguously sets forth a liquidated damages provision. Although the trial court reached this conclusion by a different construction of the Agreement, we affirm the court's ruling under the right for any reason rule. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

Rumsey contends that the trial court erred by finding that the liquidated damages provision in the Agreement was enforceable. "[T]he enforceability of a

7

liquidated-damages provision in a contract is a question of law for the court." *Liberty Life Ins. Co. v. Thomas B. Hartley Constr. Co.*, 258 Ga. 808, 809 (375 SE2d 222) (1989). "A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *AFLAC, Inc. v. Williams*, 264 Ga. 351, 354 (444 SE2d 314) (1994) (punctuation and citation omitted). In *Southeastern Land Fund, Inc. v. Real Estate World, Inc.*, 237 Ga. 227, 230 (227 SE2d 340) (1976), the Supreme Court established a three-part inquiry to determine whether a liquidated damages provision in a real estate sales contract is enforceable, and authorizes the seller to retain the earnest money paid by the buyer in the event of a breach of contract by the buyer, or whether it is unenforceable as a penalty. The three-part inquiry, which necessarily requires the resolution of questions of fact, determines if the following factors are present:

> First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.

*Southeastern Land Fund*, 237 Ga. at 230; *Liberty Life*, 258 Ga. at 809. As the movants on summary judgment, the Gillises had the burden of showing that, as to the three factors, no genuine issue of material fact exists. *Liberty Life*, 258 Ga. at 809.

8

As to the first factor, the ordinary measure of damages for breach of this kind of purchase agreement is the difference between the agreement sales price and the market value of the residence at the time of the breach – a value which "would be subject to the varying opinions of experts, who would have to reconstruct a past market when making their evaluation." Id. at 809. The record shows that Rumsey, who was experienced in real estate transactions and had purchased and sold about 20 residences in 2011, and his real estate agent, testified that the value of the residence was subject to difficult-to-predict market fluctuations. As to the second factor, the Agreement explicitly states that the parties intended for the $10,000.00 earnest money to represent liquidated damages in the event of a breach by the buyers, and that it was not intended as a penalty. *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 192 (612 SE2d 47) (2005); *Oran v. Canada Life Assur. Co.*, 194 Ga. App. 518, 520 (390 SE2d 879) (1990). As to the third factor, $10,000.00 of earnest money as liquidated damages represents about two percent of the $550,000.00 purchase price of the residence. This percentage of the sales price is well within other payments of earnest money as liquidated damages found to be reasonable as a matter of law. *Swan Kang, Inc. v. Kang*, 243 Ga. App. 684, 686 (534 SE2d 145) (2000) (two percent of sales price);

9

*Liberty Life*, 258 Ga. at 809 (ten percent of sales price); *Fuqua Constr. Co. v. Pillar Dev., Inc.*, 293 Ga. App. 462, 465 (667 SE2d 633) (2008) (two percent of sales price).

We find that the Gillises carried their burden with respect to the three *Southeastern Land* factors, and that the trial court correctly determined as a matter of law that the liquidated damages provision in the Agreement was not a penalty and was enforceable. Since the liquidated damages provision in the Agreement was enforceable, the $10,000.00 in earnest money retained by Rumsey as liquidated damages was the maximum amount he was entitled to collect against the Gillises for damages as a result of their breach of the Agreement. *Fickling & Walker Co. v. Giddens Constr. Co.*, 258 Ga. 891, 898 (376 SE2d 655) (1989). Accordingly, the trial court correctly granted summary judgment in favor of the Gillises on all of Rumsey's claims seeking to collect actual damages (in excess of the agreed liquidated damages) for breach of the Agreement. Id.

Rumsey contends that, even if his claim for actual damages for breach of the agreement to purchase the residence was barred by the liquidated damages defense, he was still entitled to sue the Gillises for actual damages for breach of the separate lease agreement. On the lease claim, Rumsey sought to collect rent he claims was due under the lease from the date the Gillises allegedly breached both the lease and the

10

Agreement by vacating the residence in November 2011, until the date he sold the residence to a third party in March 2012. The Agreement refers to the attached lease "made a part of this Agreement," and further provides that:

> Prior to purchasing the [residence], the Buyer (referred to as 'Tenant' where the context would so indicate) will be leasing the [residence] in accordance with the terms and conditions of a separate Lease Agreement ('Lease') between the parties attached hereto as an exhibit. In the event the Lease is terminated by Seller due to a default of the Tenant thereunder, Buyer shall also be deemed to be in default of this Agreement and Seller may pursue all of its remedies. . . .

The lease provides that the lease term commences on May 3, 2011, "and shall end at the closing of the purchase of the [residence] by Tenant pursuant to [the] Agreement between the parties. . . ." Thus, the Agreement and the attached lease make clear that, when the Gillises vacated the residence, this constituted not only a breach of the lease but a breach of the entire Agreement, and that the parties did not intend for the residence to be leased apart from the buyer/tenant's agreement to purchase the residence. Rumsey and his real estate agent confirmed this understanding in deposition testimony that the Gillises' breach of the lease was considered a breach of the entire Agreement, which entitled Rumsey to retain the $10,000.00 in earnest money. Accordingly, the trial court correctly ruled that

11

Rumsey's retention of the $10,000.00 earnest money extinguished his claim for rent allegedly due after the Gillises breached the Agreement by vacating the residence.[2]

We find no merit to Rumsey's claim that the Gillises waived their liquidated damages defense because it was not raised in their initial answer to his complaint. See OCGA § 9-11-8 (c) (pleading affirmative defenses). The Gillises raised this defense for the first time in their motion for summary judgment, and thereafter in an amended answer. Assuming this was the assertion of an affirmative defense, it was timely raised for the first time in the motion for summary judgment. *Gober v. Hospital Auth. of Gwinnett County*, 191 Ga. App. 498, 498-499 (382 SE2d 106) (1989); *Brown v. Moseley*, 175 Ga. App. 282, 283 (333 SE2d 162) (1985); *Hardy v. Ga. Baptist Health Care Systems, Inc.*, 239 Ga. App. 596, 597 (521 SE2d 632) (1999).

Without citation to the record or to supporting authority, Rumsey contends the trial court erred by ruling that he was prohibited from tendering the $10,000.00 in

---

[2] We note that the lease also gave Rumsey (as landlord) the right to seek other damages, for example, the cost of repairing damage to the residence (other than normal wear and tear) caused by actions or neglect of the tenant, tenant's household, or their invitees, while the tenant occupied the residence. Rumsey did not seek those kinds of damages, and we render no opinion on whether the liquidated damages defense would apply to those damages.

earnest money to the Gillises once they asserted the liquidated damages defense. This claim of error is deemed abandoned. Court of Appeals Rule 25 (c) (2).

2. Rumsey contends that the trial court erred by ruling that the Gillises' liquidated damages defense did not bar their counterclaims.

As set forth above, the Gillises brought two counterclaims against Rumsey asserting: (1) that, because the Agreement was unenforceable, they were entitled to return of the $10,000.00 they paid as earnest money, and (2) that, during the period they leased the residence under the Agreement, they suffered damage as a result of Rumsey's breach of his duty to keep the residence in good repair. In the order granting summary judgment in favor of the Gillises on their liquidated damages defense, the trial court added the following statement: "As no motion regarding [the Gillises'] counterclaims for damages has been filed, the same shall remain for resolution by a jury."

To the extent this statement could be interpreted as a ruling that the Gillises remain entitled as a matter of law to pursue their counterclaim for return of the $10,000.00 earnest money from Rumsey, we reverse. The Gillises moved for and obtained an order granting summary judgment in their favor on their liquidated damages defense. In the order, the trial court ruled that the Agreement between the

13

parties contained an enforceable provision under which Rumsey retained the $10,000.00 in earnest money as liquidated damages, and that this barred his claims seeking to collect actual damages in excess of the agreed damages. Although the trial court's order did not dispose of the Gillises' pending counterclaims, and the court did not direct entry of final judgment pursuant to OCGA § 9-11-54 (b), Rumsey directly appealed from the court's ruling pursuant to OCGA § 9-11-56 (h). This Court's ruling on appeal affirming the trial court is binding on all subsequent proceedings in the case in the trial court, and necessarily precludes the Gillises' counterclaim for return of the $10,000.00 earnest money. OCGA § 9-11-60 (h). As to the Gillises' counterclaim alleging damages caused by Rumsey's breach of the duty to keep the residence in good repair, this claim concerns fixed damages which the Gillises claim occurred before they vacated the residence and ceased paying rent. We conclude that these damages were not within the contemplation of the liquidated damages provision, and that the counterclaim for these damages is not precluded by rulings in the trial court and this Court on the liquidated damages defense.

*Judgment affirmed in part and reversed in part. McFadden and Ray, JJ., concur.*

14