**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 20, 2021**

# In the Court of Appeals of Georgia

A21A1005. BROWNE & PRICE, P. A. v. INNOVATIVE EQUITY CORPORATION.

HODGES, Judge.

Innovative Equity Corporation, a real estate seller, sued Browne & Price, P. A. for breach of contract, breach of fiduciary duty, and legal malpractice arising from a failed real estate transaction in which Browne & Price served as the escrow agent for the prospective purchaser, Chris Harrell.[1] Browne & Price moved for summary judgment on each of Innovative's claims, arguing that (1) a liquidated damages provision in the parties' purchase and sale agreement represented an unenforceable penalty; (2) an indemnity clause in the parties' agreement insulated Browne & Price

---

[1] Innovative also sued Harrell, but there are no dispositive motions either for or against Harrell in the record. As a result, the trial court's order did not adjudicate any claims concerning Harrell, and Harrell is not a party to this appeal.

from liability; and (3) the absence of an attorney-client relationship precluded Innovative's malpractice cause of action. Following a hearing, the Superior Court of Baldwin County denied the motion, but granted Browne & Price a certificate of immediate review. We granted Browne & Price's application for interlocutory appeal, and now conclude that the liquidated damages provision of the parties' contract was not an unenforceable penalty, that material issues of fact exist relating to an indemnification clause in the contract, and that the absence of an attorney-client relationship bars Innovative's legal malpractice cause of action against Browne & Price. Therefore, we affirm in part and reverse in part the trial court's order denying Browne & Price's motion for summary judgment.

"We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." (Citation and punctuation omitted.) *Crown Series, LLC v. Holiday Hospitality Franchising, LLC*, 357 Ga. App. 523 (851 SE2d 150) (2020). So viewed, the record reveals that Innovative and Harrell entered a purchase and sale agreement for certain real property in Fulton County on April 3, 2018, identifying the parties as the seller and the purchaser, respectively (the "Contract"). The Contract provided for a purchase price of $1,665,000 to be paid by the April 20, 2018 closing date. The Contract also required a $60,000 earnest money

payment by check within three days of the date of the Contract, to be paid to Browne & Price as the "Holder of Earnest Money."[2] To that end, Paragraph 7 (d) of the Contract stated that

> [a]ll parties hereby covenant and agree to: (1) Indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

Because the parties agreed that the transaction would be an all-cash sale, the Contract acknowledged that Browne & Price would represent Harrell at closing.[3]

On or about April 3, 2018, Harrell tendered a check in the amount of $60,000 to an attorney with Browne & Price. However, at no point did Browne & Price

---

[2] Exhibit C to the Contract also provided that Browne & Price, as the holder of the earnest money, would serve as the closing attorney for the sale.

[3] Paragraph 6 of the Contract stated that "[i]n transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer."

deposit an earnest money check from Harrell into escrow.[4] Thereafter, Harrell failed to close the purchase of the property on April 20, 2018 as agreed.

As a result of Harrell's failure to close, Innovative sent a notice of termination to Browne & Price on April 23, 2018 requesting payment of the earnest money as compensation. Browne & Price did not remit payment to Innovative. Thereafter, Innovative sold the property to another buyer for $1,496,500, closing on July 16, 2018.

Innovative sued Harrell for breach of contract and Browne & Price for breach of contract, breach of a fiduciary duty, and legal malpractice. Browne & Price moved for summary judgment, alleging that the earnest money due under the Contract — which is, in essence, a liquidated damages provision[5] — is unenforceable because it was "an arbitrary number to be haggled over" rather than a "reasonable pre-estimate

---

[4] Harrell contends that Browne & Price informed him that it had lost the check. At Browne & Price's request, Harrell asserts that he sent Browne & Price a photograph of a replacement check. In contrast, Browne & Price claims that it did not deposit an escrow check because Harrell instructed it not to deposit a check (to which Harrell admitted during deposition testimony) because it was drawn on the wrong account; instead, Harrell suggested that a substitute check would issue. Regardless of the reason, the fact remains that Browne & Price did not deposit a check from Harrell into escrow.

[5] See *Fickling & Walker Co. v. Giddens Constr. Co.*, 258 Ga. 891, 897 (3) (376 SE2d 655) (1989).

4

of damages that would likely be incurred as a result of [a] breach." In addition, Browne & Price argued that the hold-harmless provision of the Contract shielded it from liability. Finally,[6] Browne & Price asserted that it was not liable to Innovative for legal malpractice because it did not have an attorney-client relationship with Innovative.

Following a hearing, the trial court denied Browne & Price's motion, concluding that the liquidated damages provision was enforceable due to the "unambiguous contract language that was agreed to by the parties who were all experienced in the real estate field and the fact that the amount of earnest money was not unreasonable[.]" The trial court further concluded that the issue of whether Browne & Price was only partially negligent and, thus, whether it was protected by the indemnification provision was a jury issue. Finally, as to Innovative's claim of legal malpractice, the trial court held that "the escrow agent is properly classified as the agent of both parties, rather than as a subagent of only one of the parties with a fiduciary relationship owed solely to that party." In the manner explained above, this appeal followed.

---

[6] Browne & Price also made additional arguments, upon which the trial court ruled, but which are not enumerated as error in this appeal. Accordingly, we do not consider the additional arguments.

1. Considering Browne & Price's second enumeration first,[7] Browne & Price contends that the trial court erred in ruling that the hold-harmless provision of the Contract does not indemnify it from Innovative's claims. We do not agree.

At the outset, we note that an "escrow agent's rights, duties, and defenses are as provided by law and by the terms of the escrow agreement." *Marathon U. S. Realties v. Kalb*, 244 Ga. 390, 392 (260 SE2d 85) (1979). Furthermore, "it is well established in Georgia that contractual indemnities do not extend to losses caused by an indemnitee's own negligence unless the contract *expressly states that the negligence of the indemnitee is covered*." (Citation omitted; emphasis supplied.) *Fayette County Nursing Home, LLC v. PRI X-Ray, LLC*, 342 Ga. App. 143, 146 (801 SE2d 116) (2017); see also *Holmes v. Clear Channel Outdoor, Inc.*, 284 Ga. App. 474, 477 (2) (644 SE2d 311) (2007).

In this case, Paragraph 7 (d) of the Contract provided, in part, that "[a]ll parties hereby covenant and agree to . . . [i]ndemnify and hold [Browne & Price] harmless from and against all claims, injuries, suits and damages *arising out of* the performance

---

[7] See *Anita Holdings, LLC v. Outlet Mall of Savannah, LLC*, 357 Ga. App. 403, 405 (1), n. 5 (850 SE2d 843) (2020) ("For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them.") (citation and punctuation omitted).

by [Browne & Price] of its duties[.]" (Emphasis supplied.) The trial court, after stating Browne & Price's argument that "the indemnification clause requires [Innovative] to indemnify [it] from any claims that do not *solely* arise from [its] negligence[,]" denied Browne & Price's motion for summary judgment because "the determination of sole or partial negligence is an issue to be determined by a jury[.]"

> Where, as here, an indemnification clause requires indemnification of losses that "arise out of" certain specified events but does not explicitly mention the indemnitee's negligence, the clause still requires full indemnification although the indemnitee's negligence may have *partially* caused the loss.

(Citation omitted; emphasis supplied.) *City of Atlanta v. Benator*, 310 Ga. App. 597, 608 (7) (b) (714 SE2d 109) (2011), disapproved in part on other grounds, *FDIC v. Loudermilk*, 305 Ga. 558, 565 (1), n. 7 (826 SE2d 116) (2019); see also *Lawyers Title Ins. Corp. v. New Freedom Mortgage Corp.*, 285 Ga. App. 22, 30 (2) (645 SE2d 536) (2007).

Therefore, the linchpin is whether Browne & Price partially or solely caused any loss suffered by Innovative. Paragraph 7 of the Contract mandated that the $60,000 earnest money "shall be paid by check . . . within 3 days from the Binding Agreement Date." Paragraph 3 of Exhibit C to the Contract provided that "Buyer shall

7

. . . be responsible for *paying all earnest money . . . to Holder* in accordance with the terms of this Agreement . . . and immediately notifying Seller when the same has been accomplished."[8] (Emphasis supplied.) Despite the plain language of this agreement, the record is not clear as to whether Harrell even *paid* the earnest money or, if he did, whether Browne & Price lost Harrell's check: Harrell contends that Browne & Price informed him that it had lost his earnest money check and that he sent Browne & Price a photograph of a replacement check at its request, while Browne & Price claims that Harrell instructed it not to deposit a check (to which Harrell admitted during deposition testimony) because it was drawn on the wrong account and that Harrell never sent a substitute check. What *is* clear is that the escrow account was never funded with the earnest money.

When the record is viewed in a light most favorable to Innovative, it does not confirm the degree to which Browne & Price may have been at fault as a matter of law. In short, whether the fault for the failure to deposit the earnest money was solely Browne & Price's (in view of the possible loss of Harrell's check), solely Harrell's (for the instruction against depositing a check and the subsequent failure to remit a

---

[8] Whether Harrell separately breached the Contract is not before us and we express no opinion on that issue.

replacement check as requested), or some partial combination of the two is unclear from the record.

As a result, the trial court did not err in denying Browne & Price's motion for summary judgment.

2. Next, Browne & Price argues that the trial court erred in denying its motion for summary judgment related to payment of the earnest money as liquidated damages. In particular, Browne & Price contends that the trial court (1) erroneously focused on the reasonableness of the liquidated damages rather than the well-recognized elements used to evaluate such provisions; (2) relied solely on the "boilerplate language" of the Contract indicating that the liquidated damages were reasonable; and (3) erroneously considered the parties' experience in the real estate industry. Although we disagree with the trial court's analysis, we agree with its conclusion that Browne & Price is not entitled to judgment as a matter of law.

Generally, "Georgia law allows parties to provide for liquidated damages in their contracts, and unless the provision violates some principle of law, the parties are bound by their agreement." (Citation and punctuation omitted.) *Crown Series*, 357 Ga. App. at 525 (1). "A liquidated damages provision is enforceable if (1) the injury caused by the breach is difficult or impossible to estimate accurately; (2) the parties

9

intended to provide for damages rather than a penalty; and (3) the sum stipulated is a reasonable pre-estimate of the probable loss." (Citation and punctuation omitted.) Id. at 525-526 (1). This analysis also applies to contracts governing real estate transactions. See generally *Southeastern Land Fund, Inc. v. Real Estate World, Inc.*, 237 Ga. 227 (227 SE2d 340) (1976) (applying three-part analysis to real estate contracts). To that end,

> [d]etermining whether a liquidated damages provision is enforceable is a question of law for the court, which necessarily requires the resolution of questions of fact. To obtain summary judgment, the moving party must show there is no genuine issue of material fact as to the three factors set out above and that the undisputed facts warrant judgment as a matter of law. [Furthermore], a defendant need not produce any evidence, but must point to an absence of evidence supporting at least one essential element of the plaintiff's claim.

(Citation and punctuation omitted.) *Crown Series*, 357 Ga. App. at 526 (1). In this case, the parties do not appear to contest the first and second factors of the liquidated damages analysis — that "the injury caused by the breach is difficult or impossible to estimate accurately" and that "the parties intended to provide for damages rather than a penalty[.]" Id. at 526 (1). Accordingly, we address Browne & Price's arguments concerning the third factor.

10

"[T]he touchstone question [of the third factor] is whether the parties employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss." (Citation, punctuation, and emphasis omitted.) *Crown Series*, 357 Ga. App. at 528 (1) (b); see also *Mariner Health Care Mgmt. Co. v. Sovereign Healthcare*, 306 Ga. App. 873, 876 (1) (703 SE2d 687) (2010); *Caincare, Inc. v. Ellison*, 272 Ga. App. 190, 193 (1) (612 SE2d 47) (2005).

In this case, Paragraph 7 (a) of the Contract, entitled "Earnest Money," provided that in the event Browne & Price issued payment to Innovative following Harrell's breach, the payment

> shall constitute liquidated damages in full settlement of all claims of [Innovative] against [Harrell] and the Brokers in this transaction. . . . Such liquidated damages are a reasonable pre-estimate of [Innovative's] actual damages, which damages are difficult to ascertain and are not a penalty.

At the outset, we note that the parties agreed that the earnest money constituted "a reasonable pre-estimate of [Innovative's] actual damages, which damages are difficult to ascertain and are not a penalty." See generally *Crown Series*, 357 Ga. App. at 528 (1) (b); *Garrett v. Southern Health Corp. of Ellijay, Inc.*, 320 Ga. App. 176, 182 (1)

11

(739 SE2d 661) (2013) (holding that "contractual terms alone determine the parties' intent" when contract is plain and unambiguous).

> Though not singularly determinative of the outcome, the parties' agreement on this point is not without some value because our primary inquiry in this factor is "whether the parties employed a reasonable method under the circumstances to arrive at a sum that reasonably approximates the probable loss" and because, more basically, the words of a contract must mean something.

(Citation and emphasis omitted.) *Crown Series*, 357 Ga. App. at 528 (1) (b); see also *Mariner*, 306 Ga. App. at 876 (1).

Despite the plain language of the Contract, Browne & Price contends that "the parties made no pre-estimate in this case[.]" To that point, testimony concerning the manner in which the parties set the $60,000 earnest money amount is in some conflict. Harrell initially deposed that he "discussed" the amount of damages with Stokely Weinberg, Innovative's secretary, and that they had "conversations about it[,]" but later testified that he did not know "why [Innovative] asked for $60,000" or "how that number was determined." Harrell also indicated he felt the sum was "arbitrary."

12

In contrast, Weinberg denied that the earnest money figure is "arbitrary" and instead stated that it represented "the floor of the damages" expected and was the product of negotiations between the parties. Weinberg also testified that the damages would be difficult to predict, based upon the length of time needed to find another purchaser and the stigma of a failed contract. In an affidavit filed in response to Browne & Price's motion for summary judgment, Weinberg elaborated upon the difficulty to estimate damages when selling a high-end residential property, including the susceptibility of that limited market to economic fluctuations and the stigma of a failed contract. Weinberg further testified that the $60,000 earnest money amount "was intended to compensate [Innovative] for carrying the expensive property and as a reasonable hedge against future losses until another buyer was discovered."

What is left, then, is Harrell's generic testimony that he had "conversations" and "discussions" with Innovative about the earnest money, and Weinberg's testimony that the earnest money was the result of negotiations between the parties and was a reasonable estimate of Innovative's expected damages in the event of a breach. To prevail on its motion, Browne & Price needed to "point to an absence of evidence supporting at least one essential element of the plaintiff's claim" — here, "whether the parties employed a reasonable method under the circumstances to arrive

13

at a sum that reasonably approximated the probable loss." (Citation and emphasis omitted.) *Crown Series*, 357 Ga. App. at 528 (1) (b). This, it did not do. Though minimal, compare id. at 529-530 (1) (b) (outlining extensive formulae used to estimate potential loss due to breach of real estate contract), evidence of Innovative's effort to formulate a pre-estimate of its damages was not *entirely* absent, coupled with some level of negotiation between the parties.[9] Therefore, Browne & Price was not entitled to judgment as a matter of law.[10]

3. Finally, Browne & Price asserts that the trial court erred in denying its motion for summary judgment as to Innovative's cause of action for legal

---

[9] For this reason, *Ultra Group of Cos. v. S & A 1488 Mgmt.*, 357 Ga. App. 757, 760 (1) (849 SE2d 531) (2020) (finding that failure to show whether leased lottery gaming machines had been re-rented demonstrated lack of pre-estimate), and *Physician Specialists in Anesthesia, P. C. v. Macneill*, 246 Ga. App. 398, 401 (1) (539 SE2d 216) (2000) (holding that formula based upon accounts receivable was insufficient to demonstrate pre-estimate of damages resulting from physicians' departure from practice) do not compel a different result.

[10] Browne & Price is correct that the trial court's analysis, which cited *only* the sophistication of the parties and the reasonableness of the earnest money amount, was improper. See, e.g., *Crown Series*, 357 Ga. App. at 525-526 (1) (stating three-part analysis to assess enforceability of liquidated damages provision). However, even though "the trial court's reason for denying [Browne & Price's] motion for . . . summary judgment was erroneous, we may still affirm the trial court's judgment if it is right for any reason." *Amtrust N. America, Inc. v. Smith*, 315 Ga. App. 133, 136 (2) (726 SE2d 628) (2012). We do so in this case.

14

malpractice. In particular, Browne & Price argues that the Contract explicitly provided that it had no attorney-client relationship with Innovative that could support a claim of legal malpractice. We agree.

It is well settled that "[t]he relationship of attorney-client may be expressly created by written contract, or may be inferred from the conduct of the parties." (Citation omitted.) *Garrett v. Fleet Finance, Inc.*, 252 Ga. App. 47, 51-52 (2) (556 SE2d 140) (2001). To that end, "[a]ll that is necessary is a reasonable belief on the part of the would-be client that he or she was being represented by the attorney. A reasonable belief is one which is reasonably induced by representations or conduct on the part of the attorney." (Citation omitted.) *Estate of Nixon v. Barber*, 340 Ga. App. 103, 106 (1) (796 SE2d 489) (2017). And "[i]t is generally held that an attorney-client relationship must be demonstrated before a plaintiff may recover in a legal malpractice suit." (Citation and punctuation omitted.) *Williams v. Fortson, Bentley & Griffin*, 212 Ga. App. 222, 223 (1) (b) (441 SE2d 686) (1994).

In this case, Exhibit C to the Contract provided that Browne & Price, as the holder of the earnest money, would serve as the closing attorney for the sale. Paragraph 6 of the Contract provided that "[i]n transactions where the Buyer does not obtain mortgage financing, *the closing attorney shall represent the Buyer*."

15

(Emphasis supplied.) The parties agreed that the purchase of the property would be an all-cash transaction. It follows that, under the plain language of the Contract, Browne & Price represented Harrell in the transaction. See *Garrett*, 252 Ga. App. at 51 (2) ("A closing attorney has a fiduciary relationship as agent with his client."); see also *Howard v. Sellers & Warren, P. C.*, 309 Ga. App. 302, 305 (1), n. 1 (709 SE2d 585) (2011) (physical precedent only) (rejecting claim of attorney-client relationship in view of disclaimer of representation); compare *Wright v. Cook*, 252 Ga. App. 759, 760 (556 SE2d 146) (2001) (finding issue of fact as to attorney-client relationship in absence of a disclaimer of representation provision).[11] Furthermore, Innovative has cited nothing from the record even suggesting it believed that Browne & Price was its attorney. See *Estate of Nixon*, 340 Ga. App. at 106 (1). As a result, "[n]o attorney-client relationship has been demonstrated, and thus [Innovative] ha[s] no claim against [Browne & Price] for legal malpractice." *Williams*, 212 Ga. App. at 224 (1) (b).

---

[11] As a result, the cases upon which Innovative relies, of which *Fickling & Walker Co. v. Giddens Constr. Co.*, 258 Ga. 891 (376 SE2d 655) (1989) and *Roberts v. Porter, Davis, Saunders & Churchill*, 193 Ga. App. 898 (389 SE2d 361) (1989) are representative, do not advance its argument on this point because there is no reference to a designation of representation such is at issue in this case.

In sum, we conclude that material questions of fact remain as to whether Browne & Price was partially or solely responsible the failure to deposit the earnest money. We further conclude that there is at least some evidence that Innovative prepared a pre-estimate of its damages such that the liquidated damages provision in the Contract is not a penalty. Finally, no attorney-client relationship existed between Browne & Price and Innovative which could otherwise support a claim for legal malpractice. Therefore, having found no independent basis to affirm the trial court's judgment, we affirm in part and reverse in part the trial court's order denying Browne & Price's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Miller, P. J., and Pipkin, J., concur*.

17